UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK



FORM TO BE USED IN FILING A CIVIL COMPLAINT IN FEDERAL COURT

(Non-Prisoner Context)

All material filed in this Court is now available via the INTERNET. See Pro Se Privacy

Notice for further information.

1. CAPTION OF ACTION 

Carolette Meadows

Vs

Department of Veterans Affairs

Veterans Affairs Western New York Healthcare System (VA)

Rana Samuel

Manola Demunda

Benjamin Nickle

Introduction

This is a complaint for injunctive relief and damaged brought pursuant to 29 CFR §

1614.403(a). from the Dept.'s Office of Employment Discrimination Complaint

Adjudication (OEDDCA) , Title VII of the Civil Rights Act of 1964, as amended, §701 et

seq., 42 USC 2000e et seq., and the Rehabilitation Act of 1973, as amended, 29 USC 706; 791 et seq

2. Jurisdiction is conferred upon this Court by 28 USC § 1331

3. Venue is properly laid in the Western District of New York pursuant to 28 USC § 1391(b) because the Defendants, all reside or are organized in the Western District of New York, and because the events giving rise to the Complaint occurred in the Western District of New York

## PARTIES

1. Carolette Meadows (CM) is a Black, disabled, former employee of the VA, residing at 281 Barnard St. Buffalo, NY 14202

2. US Dept. of Veterans Affairs (DOVA), is a federal agency, located within the City of Buffalo

3. VA, is a federal agency, located within the City of Buffalo

4. Rana Samuel, was at all times relevant to this action, an employee of the VA

5. Manola Demunda, was at all times relevant to this action, an employee of the VA

6. Benjamin Nickle, was at all times relevant to this action, an employee of the VA

## PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A. Have you begun any other lawsuits in state or federal court dealing with the same facts involved in this action?

No

<u>CLAIM</u>

1. This claim will need to be amended once I obtain my personnel file. As of right now, the archive is closed due to COVID but I need to file this case in order to preserve my timeline.

 NATIONAL ARCHIVES

 ## National Archives at St. Louis Closed

The research room at the National Archives at St. Louis remains closed due to the COVID-19 pandemic. The National Archives will decide when to begin reopening our facilities based on guidance from the Federal Government, including the Office of Management and Budget (OMB), the Centers for Disease Control and Prevention (CDC), and the Office of Personnel Management (OPM). We are working diligently on our plans for the gradual reopening of our facilities across the country. The reopening plans will be based on local conditions for each geographic area. Even as we begin to reopen, operations may be curtailed due to limited staffing or the need to temporarily close facilities for cleaning. Please understand the protection and safety of our staff, volunteers, and the public remain our top priority. We will provide further information as it is available - please monitor our web page archives.gov/st-louis for future developments. We appreciate your understanding and patience.

 ## Notice to NARA Researchers and FOIA Requesters

Due to the COVID-19 pandemic and pursuant to guidance received from the Office of Management and Budget (OMB), NARA has adjusted its normal operations to balance the need of completing its mission-critical work while also adhering to the recommended social distancing for the safety of our staff. As a result of this re-prioritization of activities, you may experience a delay in receiving an initial acknowledgment as well as a substantive response to your reference or FOIA request or appeal. We apologize for this inconvenience and appreciate your understanding and patience. Read more on how NARA is addressing COVID-19 (coronavirus) archives.gov/coronavirus.

# National Archives at St. Louis

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Revised 07/07 WDNY

*Carolette Meadows*

_____

_____

Name(s) of Plaintiff or Plaintiffs

**Jury Trial Demanded: Yes____ No____**

-vs-

*Dept of V.A., VAWNY, RAWA Samuel*
*Mawola Nemunda*
*Benjamin Nickle*

Name of Defendant or Defendants

**DISCRIMINATION COMPLAINT**

_____ -CV- _____

You should attach a copy of your **original Equal Employment Opportunity Commission (EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision**, **AND** a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do so may delay your case.

*Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

____ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).
> **NOTE**:  In order to bring suit in federal district court under Title VII, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
> **NOTE**:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you **must first file charges** with the Equal Employment Opportunity Commission.

____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
> **NOTE:**  In order to bring suit in federal district court under the Americans with Disabilities Act, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.  Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

~~N~~     New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1.  My address is: _281 Barnard St_
    _Bflo, NY 14206_

    My telephone number is: _716-848-0501_

2.  The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

    Name: _VA WNY 3495 Bailey Ave Bflo, NY 14215_

    Number of employees: _>500_

    Address: _____

3.  (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked.  (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

    Name: _Rana Samuel, Manola Demunda, Benjamin Nickle_

    Address: _SAME_

## CLAIMS

4.  I was first employed by the defendant on (date): _____

5.   As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
     _____ *2009* _____

6.   As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any
     did): _____ *Continuous from 2009 - 2020* _____
     _____
     _____

7.   I believe that the defendant(s)

     a.  _____ *✓*   Are still committing these acts against me.
     b.  _____        Are not still committing these acts against me.
     (Complete this next item **only** if you checked "b" above)   The last discriminatory act
     against me occurred on (date) _____
     _____

8.   (Complete this section **only** if you filed a complaint with the New York State Division of
     Human Rights)

     The date when I filed a complaint with the New York State Division of Human Rights is
     _____
     _ (estimate the date, if necessary)

     I filed that complaint in (identify the city and state): _____
     _____

     The Complaint Number was: _____

9.   The New York State Human Rights Commission did _____ /did not _____
     issue a decision.  (**NOTE:**  If it **did** issue a decision, you **must attach** one copy of the
     decision to **each** copy of the complaint; failure to do so will delay the initiation of your
     case.)

10.  The date (if necessary, estimate the date as accurately as possible) I filed charges with the
     Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged
     discriminatory conduct is: _____ *2020* _____

11.  The Equal Employment Opportunity Commission did _____ /did not
     _____ issue a decision.  (**NOTE:**  If it **did** issue a decision, you **must attach** one
     copy of the decision to **each** copy of the complaint; failure to do so will delay the
     initiation of your case.)

12.  The Equal Employment Opportunity Commission issued the attached Notice of Right to
     Sue letter which I received on: _____. (**NOTE:**  If it

                                        3

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13. I am complaining in this action of the following types of actions by the defendants:

   a. _____ Failure to provide me with reasonable accommodations to the application process

   b. _____ Failure to employ me

   c. _____ Termination of my employment

   d. _____ Failure to promote me

   e. _____ Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

   f. _____ Harassment on the basis of my sex

   g. _____ Harassment on the basis of unequal terms and conditions of my employment

   h. _____ Retaliation because I complained about discrimination or harassment directed toward me

   i. _____ Retaliation because I complained about discrimination or harassment directed toward others

   j. _____ Other actions (please describe) _____
   _____
   _____

14. Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

   a. _____ Race                      f. _____ Sexual Harassment

   b. _____ Color                     g. _____ Age
                                        _____ Date of birth
   c. _____ Sex
                                        h. _____ Disability
   d. _____ Religion                  Are you incorrectly perceived as being
                                        disabled by your employer?
   e. _____ National Origin           ____ yes  ____ no

15. I believe that I was _____/was not _____ **intentionally** discriminated against by the defendant(s).

4

16. I believe that the defendant(s) is/are _____ is not/are not _____ still committing these acts against me.  (If you answer is that the acts are not still being committed, state when: ___*2010*___ and why the defendant(s) stopped committing these acts against you: ___*termination*___

17. **A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim.** (**NOTE**:  You **must** attach a copy of the **original complaint** you filed with the Equal Employment Opportunity Commission and a copy of the **Equal Employment Opportunity Commission affidavit** to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one)*:
    _____  **has not** issued a Right to sue letter
    _____  **has** issued a Right to sue letter, which I received on _____

19. State here as briefly as possible the *facts* of your case.  Describe how each defendant is involved, including *dates* and *places*.  Do not give any legal arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need.  Attach extra sheets if necessary.)*

## FOR LITIGANTS ALLEGING <u>AGE DISCRIMINATION</u>

20. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct
    _____ 60 days or more have elapsed        _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM

21. I first disclosed my disability to my employer (or my employer first became aware of my disability on ___*2011*___

22.   The date on which I first asked my employer for reasonable accommodation of my
      disability is _____ 2011 _____

23.   The reasonable accommodations for my disability (if any) that my employer provided to
      me are: ___ Reassignment adeptive eqvipment _____
      _____
      _____

24.   The reasonable accommodation provided to me by my employer were _____/were not
      _____ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate,
including injunctive orders, damages, costs and attorney's fees.

Dated: __10/25/2021__          _Campbell Frase_____

                                        Plaintiff's Signature

6



**U.S. Department of Veterans Affairs**
Office of General Counsel
**Office of Chief Counsel - District North Atlantic**

3495 Bailey Ave.
Buffalo, NY 14215
TEL: (716) 435-9934
FAX: (202) 495-5574
EMAIL: Kimberly.Thrun@va.gov

## AGENCY BRIEF
## RESPONSE TO APPEAL OF FINAL AGENCY DECISION

April 18, 2020

Via FEDSEP
U.S. Equal Employment Opportunity Commission

Re:   Carolette Meadows v. Department of Veterans Affairs
Agency Case No.: 200H-0528-2019101124
EEOC No.: 520-2020-00011X
Appeal No.: 2021002103

Dear EEOC:

In accordance with your letter of February 17, 2021, the Department of Veterans Affairs ("Agency") hereby files this Agency Statement/Brief on Appeal.

On March 22, 2019, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Department's Office of Employment Discrimination Complaint Adjudication (OEDCA) December 22, 2020 Final Agency Decision (FAD) concerning her Equal Employment Opportunity (EEO) Complaints alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, Section 701 et seq., 42 U.S.C. 2000e et seq. ("Title VII") and the Rehabilitation Act of 1973, as amended, 29 U.S.C. 706; 791 et seq. in which OEDCA determined that "Complainant failed to prove that she was discriminated against as alleged." (FAD, p. 11).

Appellant has not submitted a brief or additional argument in support of her Appeal and, as such, has offered no reason why the Final Agency Decision should be disturbed.  Since the 30-day time period for filing such a brief or statement has expired, the Agency requests that the Commission decline to consider any such document submitted by the Appellant.  However, in the event that the Complainant submits and untimely statement or brief, and the Commission elects to accept such a statement, the Agency reserves the right to supplement its response.

For the following reasons, the Agency respectfully requests that the Commission AFFIRM the Agency's final decision in this matter.

1

## PRELIMINARY STATEMENT

The Complainant alleged discrimination based on sex, disability (including failure to reasonably accommodate) and reprisal. The Final Agency Decision accurately articulated the relevant standards, appropriately applied the facts, and concluded that (1) Complainant failed to establish that the Agency failed to accommodate her disability, the Agency met its obligations under the Rehabilitation Act; (2) Complainant failed to show by the requisite standard that management's explanation is pretext and that management's conduct was actually based on prohibited discriminatory motives; and (3) Complainant has failed to establish that she was subjected to a hostile work environment.

OEDCA appropriately concluded Appellant failed to meet the burden of proof with respect to her claims.  As set forth in OEDCA's FAD, the record simply does not support Appellant's discrimination, hostile work environment, or reprisal allegations. Likewise, on appeal, Appellant presents no evidence or argument to show she satisfied this burden of proof regarding the claims of unlawful discrimination. Accordingly, OFO should affirm the FAD.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Health Technician (Phlebotomist) in the Phlebotomy Lab/department at the Agency's Western New York VA Health Care System, Medical Center in Buffalo, New York. (*See* ROI, p. 4 (Tab 1-1)). On March 22, 2019, Complainant filed an EEO complaint (Agency No. 200H-0528-2019101124) in which she alleged that the Agency discriminated against her and subjected her to a hostile work environment based on sex, disability, and in reprisal when:

1. In January 2018, the Transfusion Services Supervisor [Benjamin Nickle (S1)] and the Clinical Laboratory Manager [Manola DeMunda (S2)] issued complainant a reprimand;

2. In April 2018, the Clinical Laboratory Manager [Manola DeMunda (S2)] harassed Complainant in the Outpatient Phlebotomy Lab (OPL);

3. In June 2018, the Transfusion Services Supervisor [Benjamin Nickle (S1)] and the Clinical Laboratory Manager [Manola DeMunda (S2)] and Chief of Staff [Grace Stringfellow (S4)] suspended Complainant for three days;

4. In September 2018, the Transfusion Services Supervisor [Benjamin Nickle (S1)] and the Clinical Laboratory Manager [Manola DeMunda (S2)] and Chief, Pathology, and Laboratory Medicine Services [Rana Samuel (S3)], placed Complainant under restriction;

5. In September 2018, the Transfusion Services Supervisor [Benjamin Nickle (S1)] instructed Complainant to perform duties outside of Complainant's job description.

6. In September 2018 the Clinical Laboratory Manager [Manola DeMunda (S2)] harassed and insulted Complainant about her qualifications;

2

7. On or about October 15, 2018, the Transfusion Services Supervisor [Benjamin Nickle (S1)] and the Clinical Laboratory Manager [Manola DeMunda (S2)] changed Complainant's job duties which violated Complainant's reasonable accommodation and exacerbated her medical condition;

8. On or about October 23, 2018, the Outpatient Phlebotomy Lab implemented a "one-man weekend" in the Outpatient Phlebotomy Lab which exacerbated Complainant's medical condition;

9. On October 29, 2018, Complainant became aware she was not selected for the Phlebotomist (Health Technician) position, vacancy announcement #DE- 10322394-18-SM;

10. In November 2018, (A) the Transfusion Services Supervisor [Benjamin Nickle (S1)] placed her under surveillance and scrutiny and (B) mislead the Human Resources Specialist [Sean McCrea], when the Transfusion Services Supervisor failed to disclose that the weekend detail involved continuous bending;

11. In November 2018, the Transfusion Services Supervisor [Benjamin Nickle (S1)] changed Complainant's three-week rotation and scheduled her for a weekend shift;

12. Since November 27, 2018, Complainant was denied a request for reasonable accommodation and "forced" to take Leave without Pay (LWOP).

Events 7, 9, 11, and 12 above were found to constitute timely raised discrete acts that were accepted for investigation as independently actionable claims, in addition to their inclusion for consideration in the analysis of the harassment claim.

Complainant identified her first level supervisor [Benjamin Nickle, Transfusion Services Supervisor] ("S1"), second level supervisor [Manola Damunda, Clinical Laboratory Manager] ("S2"), third level supervisor [Dr. Rana Samuel, Chief, Pathology, and Laboratory Medicine Services] ("S3"), and fourth level supervisor [Dr. Grace Stringfellow, Chief of Staff] ("S4") as responsible management officials (RMO). (*E.g.*, ROI, p. 55-56).

Benjamin Nickle (S1) was only aware of Complainant's instant EEO activity (on January 1, 2019). (ROI, p. 91, 93 (Tab 7-3)). He was unaware Complainant had a disability until on or around when she requested the reasonable accommodation that is the subject of this action. (ROI, p. 92 (Tab 7-3)).

Manola Damunda (S2) also became aware of Complainant's disabling medical condition around the time she requested a reasonable accommodation on October 17, 2018. (ROI, p. 162, 171 (Tab 7-3)). He was also unaware of any EEO activity prior to the instant Complaint (January 2019). (ROI, p. 163-164, 167 (Tab 7-4)).

Dr. Grace Stringfellow (S4) also only became aware of Complainant's disabling medical condition around the time she requested a reasonable accommodation. (ROI, p. 230-231 (Tab 7-6)). She was also unaware Complainant had prior EEO activity. (ROI, p. 231-232 (Tab 7-6)).

Complainant, when asked: "Have you participated in some form of prior EEO activity?" responded "no" and provided no response to the investigator's questions concerning EEO activity. (ROI, p. 56). Further, when asked, "Were the management officials who allegedly discriminated against you in this case involved in your EEO activity?," Complainant's response was again "no." (ROI, p. 57). A record search revealed that Complainant contacted an EEO counselor in 2009, but no formal Complaint was filed. (ROI, p. 284 (Tab 7-8)).

## 1.  Hostile Work Environment:

### Claim 1 – Reprimand of Complainant

Complainant offered no explanation as to why she was reprimanded, but indicated she believed her disability was the reason for the reprimand (she did not believe sex-based discrimination was the reason for the reprimand, and she answered "unk [unknown]" whether prior protected EEO activity was the reason for the reprimand). (ROI, p. 60 (Tab 7-1)).

Complainant was reprimanded on March 23, 2018[1] for being 2.75 hours late for her scheduled tour of duty (unauthorized absence) and for utilizing racial slang/remarks (e.g., "you white people" and calling a coworker "china girl") (conduct unbecoming) in the workplace. (*See e.g.,* ROI, p. 92, 112, 128 (Tab 7-3)). Prior to the aforementioned official reprimand, Complainant was verbally advised on tardiness, having been tardy on prior occasions. (ROI, p. 92, 112 (Tab 7-3)). Complainant was asked if she had a valid excuse (e.g., medical or other emergent issue), but Complainant did not. (ROI, p. 114 (Tab 7-3)). A formal fact-finding was conducted relative to the racial remarks Complainant made. (ROI, p. 92, 115-132 (Tab 7-3)). Complainant admitted to making the quoted remarks, and others. (Id.)

### Claim 2 – Conversation in the Lab Regarding Absence

Complainant did not advise exactly what was said by DeMunda. (ROI, p. 61 (Tab 7-1)). Mr. DeMunda stated that: "I reminded [Complainant] at one point to make sure she lets her coworkers know when she leaves the work area for whatever reason. This is a safety concern which requires us to know where our staff is at all times. This is the same process that is followed in all sections of PALM." (ROI, p. 166 (Tab 7-4)).

### Claim 3 – Suspension for AWOL

In June 2018, Complainant was suspended for not reporting for duty as scheduled. (ROI, p. 62 (Tab 7-1), p. 93 (Tab 7-3)). After having previously been spoken to about tardiness and having been issued a formal reprimand, Complainant was late on April 18, 2018 and April 23, 2018. (ROI, p. 93, 138-140 (Tab 7-3)). Therefore, Benjamin Nickle (S1), Complainant's first-line supervisor, proposed the disciplinary action of a Three-Day Suspension and Grace Stringfellow (S4) Chief of Staff decided based on the evidence to mitigate and Suspend the Complainant for One-day. (ROI, p. 93, 138-140 (Tab 7-3)).

---

[1] There is no evidence that a reprimand was issued to Complainant in January 2018; Agency records show that the reprimand occurred on March 23, 2018. (*See* ROI, p. 92).

By Complainant's own admission, she was late and did not notify her supervisors that she would be late to work. (ROI, p. 62 (Tab 7-1)). There is no evidence that Complainant had an approved reason for being tardy (e.g., medical or other emergent issue recognized by policy), simply stating "I had personal issues." (ROI, p. 150 (Tab 7-3)).

Claim 4 – "Restriction"

In September 2018, Complainant claims she was placed "under restriction" for taking a patient to the primary clinic. (ROI, p. 63 (Tab 7-1)). Management (S1, S2, S3) deny any "restriction." (ROI, p. 94 (Tab 7-3), p. 168 (Tab 7-4), p. 205 (Tab 7-5)). There is no evidence of any "restriction(s)" placed on Complainant.

Claim 5 – Scheduling Restructure; Reduction in Weekend Staff

Complainant claims several events related to the scheduling change in the department that reduced staffing on the weekends. (*Compare* Claim 5, Claim 7, Claim 8, and Claim 11)(*See* ROI, p. 64 (Tab 7-1)). The department changed the schedule so that only one phlebotomist was on duty during weekends due to the reduced workload on the weekends. (*E.g.,* ROI, p. 97 (Tab 7-3)). Simply stated the amount of work on the weekends was not enough to support the number of staff currently scheduled. (Id.). A phlebotomist would be on-call for weekend overtime if necessitated by workload. (ROI, p. 151 (Tab 7-3)). The job duties never changed. Complainant was never asked to perform duties outside of her job description.[2] (ROI, p. 95, 151 (Tab 7-3)) (*See also* ROI, p. 193 (Tab 7-4) (indicating the tempo/workloads for phlebotomists)).

Complainant alleges the schedule was changed in order to "harass the nursing dept in order to manipulate them into performing their own weekend bloodwork," but does not further explain how this was an incident of harassment to *her* based on disability. (ROI, p. 64 (Tab 7-1)).

Claim 6 – Questioning Qualifications

Complainant alleges she was interested in a position that was being created by the department and that her second-level supervisor Manola DeMunda (S2) questioned her qualifications. (ROI, p. 65 (Tab 7-1)). Although Complainant does not advise exactly what was said by DeMunda (S2), she alleges that his comments were "harassing and insulting." (ROI, p. 65 (Tab 7-1)). DeMunda (S2) advised that "I was told by HR that because the current staff are GS5's, they would not qualify for a GS7 position without a year at the GS6 level first. I told her she could still apply, which I am told she did, however her name was not on the list of applicants that I received from HR for the position." (ROI, p. 169 (Tab 7-4)). (*See* Claim 9 – Complainant was deemed "ineligible" because she did not meet the Time-In-Grade and/or Specialized Experience, which requires "one year of specialized experience equivalent to at least the next lower grade GS-6." (ROI, p. 319 (Tab 7-15)).

---

[2] "[Complainant was] required to call a patient to her workstation from a waiting room. She then identifies the patient and puts their information into the computer where the patient's lab orders will print out for her. She then collects her supplies needed to do a phlebotomy procedure and collects the blood/urine specimens from the patients. When she collects enough samples, she needs to send them up a pneumatic tube system to the lab. She also is required to wipe down her station when needed, and to restock any supplies she uses to do the phlebotomy procedures . . . . Each phlebotomy averages around 5-10 minutes." (ROI, p. 90 (Tab 7-3)).

<u>Claim 8 - Scheduling Restructure; Reduction in Weekend Staff</u>

Complainant claims several events related to the scheduling change in the department that reduced staffing on the weekends. (*Compare* Claim 5, Claim 7, Claim 8, and Claim 11). Again - the department changed the schedule so that only one phlebotomist was on duty during weekends due to the reduced workload on the weekends. (*E.g.,* ROI, p. 97 (Tab 7-3))(*See also* ROI, p. 193 (Tab 7-4) (indicating the tempo/workloads for phlebotomists)). Simply stated the amount of work on the weekends was not enough to support the number of staff currently scheduled. (Id.). An additional phlebotomist would be on-call for weekend overtime. (ROI, p. 115 (Tab 7-3)). The job duties never changed. Complainant did not answer any of the investigator's questions other than to state "see previous question." (ROI, p. 68 (Tab 7-1)).

<u>Claim 10A – "Surveillance" and "Scrutiny"</u>

Complainant stated that she "could not recall" the specifics of this event. (ROI, p. 72 (Tab 7-1)). Benjamin Nickle (S1) stated: "[Complainant] was never placed under surveillance and scrutiny. I'm not quite sure what she is alleging." (*See* ROI, p. 98 (Tab 7-3)). Complainant presented no evidence that she was "placed under surveillance or scrutiny."

<u>Claim 10B – Failure to Disclose</u>

Benjamin Nickle (S1) provided the Reasonable Accommodation Coordinator "with all the duties and responsibilities that the health technician job [i.e., Complainant's job] required." (ROI, p. 99). Again, the job duties/description never changed. The only changed that occurred was a reduction in weekend staffing to coincide with weekend workload. (*See* ROI, p. 99 (Tab 7-3)).

**2. Independently Actionable Claims:**

<u>Claims 7– "Changed Duties"</u>

The record is devoid of any "change to Complainant's job duties." (ROI, p. 95-96 (Tab 7-3)("[Complainant's] job duties were never changed"), p. 170 (Tab 7-4), p. 213 (Tab 7-5) (Position Description), p. 342-347 (Performance Appraisal), p. 356-358 (Performance Standards)). Management did implement a staffing change for weekend coverage on or about October 6, 2018, reducing the number of phlebotomists scheduled from one to two. (Claim 5, Claim 7, Claim 8, and Claim 11)(ROI, p. 97 (Tab 7-3) (noting the change was announced in September to be effective in October), p. 170 (Tab 7-4)). As previously stated, the department changed the schedule so that only one phlebotomist was on duty during weekends due to the reduced workload on the weekends. (*E.g.,* ROI, p. 97 (Tab 7-3)) (*See also* ROI, p. 193 (Tab 7-4) (indicating the tempo/workloads for phlebotomists)). Simply stated the amount of work on the weekends was not enough to support the number of staff currently scheduled. (ROI, p. 97 (Tab 7-3)). Nonetheless, additional phlebotomist would be on-call for weekends. (ROI, p. 115 (Tab 7-3)). The job duties never changed.

Complainant did not provide a response to a majority of the investigator's questions concerning Claim 7. (*See* ROI, p. 66-68 (Tab 7-1)). Complainant indicated that she believed her disability was the reason for the change in duties (she answered "unk [unknown]" as to whether sex or prior protected EEO activity was the reason). (ROI, p. 63-64 (Tab 7-1)).

6

The record is devoid of any reasonable accommodations in place at the time of the schedule change complained of. (*See* ROI, p. 84). Subsequent to the change, Complainant requested a reasonable accommodation. As explained herein, Complainant was reasonably accommodated and not required to, inter alia, work weekend (one-man) shifts.

Claim 9 – Non-selection

Complainant submitted an application for the position of Supervisory Health Technician (GS-0640-7) (Announcement No. DE-10322394). The position required "least one full year of specialized experience equivalent to the next lower grade level (GS-6)" - The job posting states this was a requirement. (ROI, p. 70 (Tab 7-1), p. 319 (Tab 7-16) (Job Posting)). In her electronic application, Complainant indicated that she did not meet the aforementioned requirement by marking "no" indicating she did not have the required experience. (ROI, p. 70 (Question to Complainant: At the time you applied, did you mark "No" to having at least one full year of specialized experience equivalent to the next lower grade level (GS-6)? Response: yes), p. 323 (Complainant's Application)). Therefore, she was deemed "ineligible" for the position and her application package not submitted for consideration to the Hiring Manager. (ROI, Tab 7-16, 7-17.).

Complainant alleges that the job posting was somehow in violation of VHA policy that "an applicant can jump two pay grades;" however she does not cite to any such policy. Upon information and belief, there is no such policy. Moreover, as Complainant selected "no" her application was automatically denied; she was not submitted to management for further consideration.

Complainant indicated that she believed her disability was the reason for the non-selection (she answered "unk [unknown]" as to whether sex or prior protected EEO activity was the reason). (ROI, p. 67-68 (Tab 7-1)).

Claim 11 – Scheduling for Weekend Shift

Complainant was on continuous FMLA leave from October 27, 2018 through November 27, 2018. (*See* ROI, p. 100 (Tab 7-3), p. 330-334 (Tab 7-18) (Leave Use Summary)). There is no evidence that Complainant was required to work a weekend shift – management states unequivocally "this never happened." (ROI, p. 100 (Tab 7-3)). Complainant did not answer a majority of the investigator's questions other than to state "see previous." (ROI, p. 74 (Tab 7-1)). However, it does not appear that the Complainant worked a weekend shift, as she only alleges that she was "scheduled" for one during a time when she was out on leave. Complainant presented no evidence other than her own statement that she was "scheduled for a weekend shift". (ROI, p. 83 (Tab 7-2)).

Claim 12 - Reasonable Accommodation

Complainant suffers from Trochanteric Bursitis and Moderate Knee Arthritis. (*See* ROI, p. 240 (Tab 7-7)). Complainant was initially provided interim accommodation(s) as supported by the medical documentation she provided – 15 minute breaks for every hour of standing or walking. (ROI, p. 86 (Tab 7-2), p. 90 (Tab 7-3), p. 196 (Tab 7-4), p. 254 (Tab 7-7)(Approval of Interim Accommodation Form, dated 10/17/2018), p. 253, 257 (Tab 7-7) (Medical Note(s))). Complainant was advised to submit additional medical documentation, including additional documentation/clarification on what constitutes "frequent" bending. (ROI, p. 86-87 (Tab 7-2), p. 338 (Tab 7-19)). Complainant was also granted leave between October 27, 2018 and November 27, 2018

7

as an interim accommodation. (ROI, p. 152 (Tab 7-3)).  On October 31, 2018, the Agency received medical documentation from Complainant's medical provider, who opined that the Complainant should be allowed to have 15-minute breaks per hour of standing/walking with no frequent bending to allow her conditions to improve. (ROI, p. 252 (Tab 7-7)).

Complainant was thereafter given additional liberal leave while the Agency searched for a job reassignment within her restrictions and criteria. (*See* ROI, p. 180 (Tab 7-4)). As noted in the FAD, the "[Local Reasonable Accommodation Coordinator] immediately began searching for a suitable reassignment for Complainant that met her restrictions as an accommodation of last resort in addition to working with management to modify her position to fit her medical needs . . . [and] The Agency allowed her to continue take leave or LWOP as needed." (FAD, p. 7).

On January 14, 2019, the Agency offered Complainant an alternative accommodation that included: assigned schedule of Monday-Tuesday-Thursday-Friday from 9:00 AM – 1:00 PM; 15-minute rest periods per hour of continuous walking/standing (approval to utilize annual leave, sick leave, or LWOP for those times); and no frequent bending (35% of shift). (ROI, p. 334 (Tab 7-19). Ergonomic equipment had also previously been provided. (Id.).

## CONTENTIONS ON APPEAL

Complainant/Appellant has not filed a brief in support of her Appeal.

## ANALYSIS

The law prohibiting discrimination based on sex and reprisal is Title VII of the Civil Rights Act of 1964, as amended, Section 701 et seq., 42 U.S.C. 2000e et seq. ("Title VII"). The law prohibiting discrimination based on disability is the Rehabilitation Act of 1973, as amended. 29 U.S.C. 706; 791 et seq. Complaints of disability discrimination alleging disparate treatment are analyzed using the analytical model developed under Title VII case law. 517 U.S. 308, (1996). Federal sector equal employment opportunity regulations are set out in 29 C.F.R. Part 1614.

Generally, the burden of proof under each of the aforementioned Acts is allocated according to the three-part analysis established in the seminal matter of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* analytical paradigm, however, need not be adhered to, and the *prima facie* inquiry may be dispensed with, when an agency articulates legitimate and non-discriminatory reasons for its conduct. *Holley v. Dept. of Veterans Affairs*, EEOC No. 05950842 (1997). In that instance, the factfinder should proceed to the ultimate stage of the analysis and determine whether the record supports a finding of discrimination. *See U.S.P.S. v. Aikens*, 460 U.S. 711, 713-17 (1983); *Holley v. Dept. of Veterans Affairs*, EEOC No. 05950842 (1997).

In this case, as an initial matter, the Agency believes it has offered sufficient evidence of the legitimate and non-discriminatory reasons for its conduct and the record does not, otherwise, support a finding of discrimination.

Under the *McDonnell Douglas* standard, in order to prove discrimination in the absence of direct evidence, a Complainant must first establish a *prima facie* case of discrimination. *Id.* Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the actions taken. *Id.* Once the Agency offers a legitimate, non-discriminatory reason for its actions, then the *prima facie* inference disappears. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507 & 510-511 (1993). In that event, the burden is once again shifted to the Complainant to provide evidence that the reason offered by the Agency is a "pretext" for unlawful discrimination, i.e., that is the explanation is not the real reason but rather a "cover" to disguise unlawful discrimination. *Id* (*citing Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)). Complainant's subjective assertions, beliefs, opinions, feelings, or speculation as to motive, intent, or pretext are not sufficient to prove discrimination. *Holstein v. Dept. of the Treas.*, EEOC No. 0120065087 (2008); *Mohar v. U.S.P.S.*, EEOC Appeal No. 0120081664 (2008). Although the burden of production shifts during the analysis, the Complainant always retains the ultimate burden of persuasion and must persuade the deciding official that the Agency engaged in unlawful discrimination against him or her. *U.S.P.S. v. Aikens*, 460 U.S. 711, 715 (1983).

### 1.  Failure to Accommodate

Under the Rehabilitation Act, federal agencies are required to make reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability unless the Agency can show that reasonable accommodation would cause an undue hardship. See 29 C.F.R. § 1630.2(o), (p). To establish denial of a reasonable accommodation, Complainant must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. §1630.2(g); (2) she is a "qualified" individual with a disability pursuant to 29 C.F.R. §1630.2(m); and (3) the Agency failed to provide her with a reasonable accommodation.

The Agency does not contest that the record reflects that the Complainant is a qualified individual with a disability and therefore entitled to a reasonable accommodation under the Rehabilitation Act.

The evidence shows that management took appropriate actions to reasonably accommodate Complainant. The Agency initially provided her an interim accommodation in the form of breaks and then liberal leave usage while it worked on her request. The Agency searched for a suitable reassignment as an accommodation of last resort in addition to working with management to modify her position to fit her medical needs. Management officials offered a modified her work schedule so that she did not have to work weekends (assigned schedule of Monday-Tuesday-Thursday-Friday from 9:00 AM – 1:00 PM); 15-minute rest periods per hour of continuous walking/standing (approval to utilize annual leave, sick leave, or LWOP for those times); and no frequent bending (35% of shift). (ROI, p. 334 (Tab 7-19). Ergonomic equipment had also previously been provided. (Id.).

The Agency offered accommodations based on the medical evidence that adequately addressed the Complainant's functional limitations. There is no evidence that the Agency's offered accommodations were ineffective.

Therefore, as set forth in the FAD, the Agency met its obligations under the Rehabilitation Act. (Claim 7).

9

**2. Independently Actionable Claims – No Discrimination Based on Sex, Disability, or Reprisal.**

   a.  Sexual Discrimination

To establish a *prima facie* case of sex-based discrimination under Title VII, the Complainant must show that: (1) they are a member of a protected group; (2) that they suffered an adverse employment action and (3) that similarly situated employees not in their protected group were treated more favorably than they were, or some other circumstance from which an inference of discrimination may be drawn. *See e.g., Rodriguez v. Dep't of Veterans Affairs,* EEOC Appeal No. 01A06029 (February 12, 2002).

There is no indication that the department-wide weekend staffing change (inter alia, Claim 7), Complainant's non-selection for a position she was ineligible for (Claim 9), or any changes to Complainant's schedule (if any) (Claim 11) had any connection to Complainant's sex. Complainant has identified no direct evidence of discrimination or comparators that were treated more favorably under the circumstances. "[T]he record does not show, and Complainant does not offer, any evidence of expressions or conduct by management officials relating to her sex, disability, or EEO activity, from which one could infer any discriminatory or retaliatory motive." (FAD, p. 9).

   b.  Disability Discrimination

To establish a prima facie case of disability discrimination under the disparate treatment theory, a complainant must generally show: (1) the existence of a disability; (2) that he or she is a "qualified" individual; (3) knowledge by the employer of the disability; and (4) an adverse personnel action under circumstances giving rise to an inference of disability discrimination (e.g., treated differently than similarly situated employees who are not disabled or who have different disabilities). See, e.g., Prewitt, *supra*; Oberg v. Department of the Navy, EEOC Request No. 05890451 (1989); French v. Veterans Administration, EEOC Review No. 03880005 (1989).

Again, there is no indication that the department-wide weekend staffing change (inter alia, Claim 7), Complainant's non-selection for a position she was ineligible for (Claim 9), or any changes to Complainant's schedule (if any) (Claim 11) had any connection to Complainant's disability. Complainant has identified no direct evidence of discrimination or comparators that were treated more favorably under the circumstances. "[T]he record does not show, and Complainant does not offer, any evidence of expressions or conduct by management officials relating to her sex, disability, or EEO activity, from which one could infer any discriminatory or retaliatory motive." (FAD, p. 9).

   c.  Reprisal

Title VII prohibits employer actions that are based on a retaliatory motive and are likely to deter a reasonable employee or applicant from engaging in protected EEO activity. See

*Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); see also, 42 U.S.C. § 2000e-3(a).

To determine whether an employer's actions constitute retaliation the *McDonnell Douglas*, three-step, burden-shifting framework is used. *Arthur F. v. Dep't of Veterans Affairs*, EEOC No. 0120162056, (Apr. 26, 2018) *request for reconsideration denied* EEOC Request No. 0520180418 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

For a prima facie case of reprisal, the Complainant must show: (1) the complainant engaged in a protected activity, (2) management was aware of the protected activity, (3) management took action(s) which adversely impacted the complainant after the protected activity, and (4) the management action occurred in a manner that suggests the Complainant's protected EEO activity was a motivating factor for the action. *Burlington Northern and Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006). *Walker v. Dep't of Health and Human Services*, EEOC Appeal No. 01983215 (Jan. 14, 2000). *Clemente M. v. Dep't of Army*, EEOC Appeal No. 0720140015 (March 16, 2017); *Petitioner v. Dep't of the Interior*, EEOC Petition No. 0320110050 (July 16, 2014), n.6 (declining to adopt the stricter standard enunciated in *Univ. of Texas Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). So-called "retaliatory harassment" is assessed under the same standard. *EEOC Enforcement Guidance on Retaliation and Related Issues*, No. 915.004 at II.B.3. (August 25, 2016) (collecting cases). And, as discussed herein, petty slights and trivial annoyances are not actionable. *Meeker v. United States Postal Service*, EEOC Appeal No. 01A12137 (Aug. 23, 2002).

In addition, nothing in the law permits the employee to use the reprisal provisions of the antidiscrimination laws as a shield from, or immunization to, any Agency action or policy they find objectionable in some manner. *EEOC Enforcement Guidance on Retaliation and Related Issues*, No. 915.004, August 25, 2016 ("The breadth of these anti-retaliation protections does not mean that employees can immunize themselves from consequences for poor performance or improper behavior by raising an internal EEO allegation or filing a discrimination claim with an enforcement agency."). Agency actions "should not be second-guessed by the reviewing authority absence evidence of unlawful motivation." *Arthur F. v. Dep't of Veterans Affairs*, EEOC No. 0120162056, (Apr. 26, 2018) *request for reconsideration denied* EEOC Request No. 0520180418. *See also EEOC Enforcement Guidance on Retaliation and Related Issues*, No. 915.004 T II.C.2, August 25, 2016. ("It is not the employer's burden to disprove the claim [of retaliation].").

With regard to prong 3 of the prima facie analysis, "adverse" in the context of retaliation means the action might have deterred or "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2415 (2006)(internal quotations omitted). Unlike other claims of discrimination, claimed retaliatory actions which can be challenged are not restricted to only those which affect a term or condition of employment. *See EEOC Compliance Manual Section 8, "Retaliation,"* No. 915.003 (May 20, 1998).

The RMOs testified they were not aware of any prior protected EEO activity or of the Complainant's disabling condition until the instant occurrences (i.e., filing of the Complaint and

11

requesting reasonable accommodation). Nonetheless, there is no evidence that either was a "motivating" factor as it relates to the department-wide weekend staffing change (inter alia, Claim 7), Complainant's non-selection for a position she was ineligible for (Claim 9), or any changes to Complainant's schedule (if any) (Claim 11). The Agency has thoroughly explained the legitimate reasons for those events, which the Complainant finds objectionable to her – and they were not based on or motivated by prohibited retaliatory motives. The record reflects that the alleged incidents were more likely the result of routine supervision, managerial discipline, and general workplace disputes and tribulations.

    d.  Harassment

    To establish a prima facie claim of harassment Complainant must show that: (1) they belong to a statutorily protected class; (2) they were subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the unwelcome conduct was based on the statutorily protected class(es); (4) the unwelcome conduct was sufficiently severe or pervasive to alter a term or condition of employment and create an intimidating, hostile, or abusive work environment; and (5) there is a basis for imputing liability to the employer. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982). *See Cruz v. USPS*, EEOC Appeal No. 01200621331 (2007).

    Under prong 4, harassment based on an employee's protected status(es) is only unlawful when it is sufficiently "severe and pervasive." *See generally Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1986). The antidiscrimination statutes are not civility codes, however. They forbid "only behavior so objectively offensive as to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998). "In the last half century, Congress has enacted a safety net of antidiscrimination laws designed to protect workers' rights. These laws serve salutary purposes, but they are not intended to function as a collective panacea for every work-related experience that is in some respect unjust, unfair, or unpleasant." *Ahern v. Dep't of Veterans Affairs*, 629 F.3d 49 (1st Cir. 2010); *See also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Therefore, to prove a harassment claim, Complainant must establish "an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive" and show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 23 (1993).

    In determining whether hostility in a working environment is "severe and pervasive," factors to consider are: the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 23 (1993).

    In addition, under prong 3, a claim of hostile work environment can only be successful if the alleged harassment is because of the employee's membership in a protected group. *See Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533 (10th Cir. 1994) (stating that no matter how unpleasant, the nature of a working environment must be due to the plaintiff's protected characteristic to support

a hostile environment claim). Employees may be subject to an unpleasant or stressful work environment for numerous reasons that do not implicate discrimination, including interpersonal conflicts and bad management. *Brown v. U.S. Postal Service,* 115 M.S.P.R. 609, 618 (2010).

Only if Complainant establishes both of those elements (i.e., severe and pervasive hostility and a motivation based on protected class), will the question of liability be considered under the burden shifting framework.

Events 7, 9, and 11 above, may not be considered as part of Complainant's harassment claim, as per the prior analysis, they were not motivated by discriminatory or retaliatory animus. *See Oakley v. USPS,* EEOC Appeal No. 01982923 (Sept. 21, 2000). *See Epting v. Dep't of Veterans Affairs,* EEOC Appeal No. 0120112534 (September 13, 2013). (ROI, Tab B-1.)

Complainant has not offered *any* probative evidence indicative of a nexus between the alleged harassing events and the protected classes or that discriminatory/retaliatory animus played a role. The record reflects that the alleged incidents were more likely the result of routine supervision, managerial discipline, and general workplace disputes and tribulations.

Even assuming arguendo that the evidence reflects such nexus, the totality of the conduct at issue was insufficiently severe or pervasive to establish a hostile work environment. As accurately set forth in the FAD:

> "Here, Complainant's harassment claim focuses on incidents where she disagreed with management decisions. We reiterate that "harassment," as that term is defined under Title VII, does not consist of mere dissatisfaction with a supervisor in connection with management decisions and common workplace interactions. Title VII does not shield employees from the "ordinary tribulations of the workplace," such as isolated moments of friction with supervisors and coworkers, or the receipt of managerial oversight and scrutiny. It is precisely this type of complaint that Title VII's "severe or pervasive" requirement is designed to "filter out." See *Faragher,* 524 U.S. at 788 (judicial standards for harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace ....'''); *Longoria v. Dept. of Veterans Affairs,* EEOC Appeal No. 01A52731 (June 23, 2005) ("the incidents described are consistent with a supervisor providing an employee with feedback regarding the performance of duties, and thus they cannot be found to create a hostile work environment.") . . . . Complainant failed to show that it was sufficiently severe or pervasive to constitute an objectively hostile work environment. The events described by Complainant are not severe, hostile, or patently offensive . . . . Complainant has failed to show that even viewed all together, the alleged incidents created conditions that were severe or pervasive, sufficient to create a hostile work environment."

(FAD, p. 10-11).

    e.  Pretext

As accurately stated in the FAD "Apart from her own assertions, Complainant offered no evidence of pretext or discriminatory intent. Generally, a complainant's testimony alone has been judged inadequate as proof to establish pretext. *Bohrer v. Hanes Corporation,* 715 F.2d 213 (5th Cir. 1983), cert. denied, 465 U.S. 1026 (1984). Furthermore, a complainant's subjective belief that the management action at issue was the result of discrimination is insufficient to prove pretext. *See*

*Bohrer*, *supra*; *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984)."

While Complainant alleges that management wanted to find a way to "harass" the nursing department in order to manipulate them into performing their own weekend bloodwork, she offered no evidence to support her claim or how management's purported actions to "harass" the nursing department, as a whole, was discriminatory to her based on sex, disability, or retaliation.

## CONCLUSION

In view of the foregoing, and incorporating the findings and conclusions of law contained within OEDCA's FAD, the Agency respectfully requests that the Commission uphold the FAD and dismiss the appeal.

Respectfully submitted,

Kimberly M. Thrun, Esq.
Agency Representative / Staff Attorney
Department of Veterans Affairs, OGC-North Atlantic Dist.
3495 Bailey Ave.
Buffalo, NY 14215
Phone: (716) 435-9931
Email: Kimberly.Thrun@va.gov

14

CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the Agency's Brief was sent on April 18, 2021, to the following:

Complainant
*Carolette Meadows*
carolettedm@yahoo.com

281 Barnard St.
Buffalo, NY 14206

Complainant's Representative
*None*

Administrative Judge
Via FEDSEP (electronic filing)


Kimberly M. Thrun, Esq.
Agency Representative / Staff Attorney

15

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

21 CV 769v

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carolette Meadows

**(b)** County of Residence of First Listed Plaintiff   Erie
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

None

## DEFENDANTS

Dept of U.A., WNYVA ~~Sim~~ Rana Samuel, Manola Demi Benjamin Nickel

County of Residence of First Listed Defendant   Erie
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plain and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [X] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & | [ ] 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [X] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
A.D.A., Race Discrimination

Brief description of cause:
Wrongful termination d/t Race/Disability Discrimination,

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   250,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____